IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**STEPHANIE C. GURULE-HENDREN,**

Plaintiff,

v.                                                                    No. CIV 98-744 MV/RLP-ACE

**JANET RENO.**

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on plaintiff's motion for restored leave **[Doc. No. 30]**.  The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken in part and will be **GRANTED IN PART**, as explained below.

## BACKGROUND

This is an employment discrimination action.  On July 19, 1994, Stephanie Gurule-Hendren filed an EEOC complaint of discrimination and reprisal against the Immigration and Naturalization Service (INS), pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.  She alleged that INS officials discriminated against her on the basis of her sex and retaliated against her for her participation in an investigation by the Office of Inspector General (OIG).  The following facts are taken from the final decision of the U.S. Department of Justice issued on September 2, 1997.

From June 1991 to June 1994, Gurule-Hendren worked as an evidence control clerk in the investigations unit of the sub-office of the Immigration and Naturalization Service (INS) in Albuquerque.  Her first line supervisor was Special Agent Steve Abla.  On September 11, 1992, Alba noticed a woman parking in front of the INS building.  Finding this woman attractive, Abla directed Gurule-Hendren to go out and "catch her so he could meet her right away."  When Gurule-Hendren refused, Abla told her to write a note for him and put it on the woman's car windshield.  Over Gurule-Hendren's protests, Abla directed her to address the note to the woman by name (which Abla got by running her license plate through the National Crime Information Center computer), list Abla's home and work telephone numbers, and state that the woman was "absolutely beautiful."  The woman returned to her car, read the note, drove away, and called the police.

The OIG eventually began to investigate this incident, apparently after Abla tried to persuade the police not to investigate.  Although initially reluctant to damage her relationship with Abla, Gurule-Hendren gave a full statement to the OIG investigator.  For his part, Abla claimed that Gurule-Hendren was lying about the incident and that she had in fact put the note on the woman's car as a practical joke.  Several other INS employees, however, stated that Abla frequently made comments about the physical appearance of women passing outside the office and asked female employees to contact them on his behalf.  In its final decision the Department of Justice found that "by making sexual comments about women and repeatedly asking female employees to go and deliver notes or messages to women Abla found attractive, Abla engaged in unwelcome conduct on the basis of women employees' sex, which was severe or pervasive so as to create a hostile work environment."

As a result of the OIG investigation, Abla was suspended for 30 days.  On appeal Abla's

suspension was reduced to five days.  After the investigation, Abla changed the way the office

was run.  He became much more strict and vindictive.  He singled Gurule-Hendren out for

particularly harsh treatment.  Rather than speaking with Gurule-Hendren, Abla left notes on her

desk or asked other employees to convey messages to her.  At one point in March 1993, when he

was not otherwise speaking to Gurule-Hendren, Abla showed her a hunting knife in a menacing

manner and asked if it would "do the job, you know on a deer or something."  Without

justification, Abla lowered Gurule-Hendren's ratings on her 1993 and 1994 performance

appraisals.  Before the OIG investigation, Abla had rated Gurule-Hendren as "outstanding," but in

April 1994, when she was applying to be an immigration examiner, Abla dropped his professional

assessment of her to simply "recommend."  He became more strict towards Gurule-Hendren in his

policies for signing in and out and for punctuality, reprimanding her on more than one occasion.

With respect to each of these incidents, the Department of Justice found, Abla had engaged in

unlawful retaliation against Gurule-Hendren.[1]

Based upon its findings, the Department of Justice found in Gurule-Hendren's favor and

awarded her relief, including:  the revision of her 1993 and 1994 performance appraisals and

expungement of certain allegations of misconduct by Abla; the posting of a notice pursuant to 29

C.F.R. § 1614.501; and corrective action to ensure that Abla did not continue to retaliate against

Gurule-Hendren.  The Department further stated that Gurule-Hendren may be entitled to restored

sick and annual leave, compensatory damages, and attorney's fees, and set forth procedures for

---

[1] The Department did not find sufficient support for Gurule-Hendren's claims of sex discrimination.

the determination of such awards.  With respect to Gurule-Hendren's sick and annual leave, the

Department stated:

> Complainant may be entitled to restored sick and annual leave, if she can
> demonstrate that she used sick and annual leave as a direct result of being
> subjected to retaliation.  Complainant should therefore submit a claim for restored
> leave, if any, to Diane Weaver, EEO Officer . . . .  In order to recover her leave,
> complainant's claim must be well supported, and, if possible, should include a
> verified statement detailing her use of sick and annual leave and linking the use of
> this leave with the retaliation in this case.  Complainant should also include any
> other relevant documentation or supporting evidence.
>
> INS should then evaluate complainant's claim for restored leave, and, if in
> agreement with the complainant's request, should provide such relief to
> complainant.  If INS disputes reasonable resolution, they should notify this office
> so that an appropriate award may be determined.

Gurule-Hendren filed this action on June 19, 1998.  Magistrate Judge Richard L. Puglisi

held a settlement conference on March 15, 1999.  On May 25, 2000, the parties submitted a

stipulated order stating that they had resolved all issues "with the exception of the amount of

restored leave time (sick and/or annual) that is to be returned to plaintiff."  The parties stated that

they "agree that restored leave is appropriate, but dispute the amount of leave that should be

restored."  They have since submitted briefs on this issue.

## ANALYSIS

### I.     TIMELINESS

At the outset, the government argues that Gurule-Hendren's motion should be denied for

failure to comply with the briefing schedule set by the Magistrate Judge.  In an order dated June

13, 2000, the Magistrate Judge directed Gurule-Hendren to serve her motion "on the back pay

issue" by June 28, the government to serve its response by July 12, and Gurule-Hendren to file the

entire motion package (including any reply) by July 26.[2]  These deadlines were not met.  Plaintiff's

counsel states that he was unable to obtain agency records necessary to address the issue of

restored leave until July 19, 2000.  Defense counsel was on vacation and unavailable during the

last two weeks of June.  In July the parties held several discussions in an attempt to settle the

leave issue.  After receiving the documents on July 19, plaintiff's counsel prepared a

memorandum brief and delivered it to defense counsel on July 24.  On July 31, defense counsel

told plaintiff's counsel that he would challenge the brief as untimely.  Gurule-Hendren

immediately filed a motion for enlargement of time to file the motion package, which the

Magistrate Judge denied on August 1 **[Doc. No. 28]**.  The government served its response on

August 9, and Gurule-Hendren ultimately filed the motion package on August 11.

   Gurule-Hendren concedes that her brief and reply are untimely.  She argues, however, that

dismissal of her claim for restored leave would be a disproportionately harsh sanction.  The Court

agrees.  Dismissal represents "an extreme sanction appropriate only in cases of willful

misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (citing *Meade v.*

*Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988); *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d

869, 872-73 (10th Cir. 1987); *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir.

1987)).  A court must consider three factors in deciding whether dismissal with prejudice is an

appropriate sanction for a party's failure to file a timely document:  (1) the degree of actual

---

   [2] In a footnote Gurule-Hendren writes that the Magistrate Judge's scheduling order "did
not provide for the required 3 days of mailing . . . as required by Rule 6(e)."  Federal Rule of Civil
Procedure 6(e), however, applies only to responses that are due within a certain number of days
after service of a preceding document.  If a court sets a date certain for the filing or service of a
document, the extra-three-day rule does not apply.

prejudice to opposing party, (2) the amount of interference with the judicial process, and (3) the party's culpability. *Murray v. Archambo*, 132 F.3d 609, 611 (10th Cir. 1998) (citation omitted). "[O]nly when these aggravating factors outweighed the judicial system's strong predisposition to resolve cases on their merits is outright dismissal with prejudice an appropriate sanction." *Id.* (citation omitted).

Here, Gurule-Hendren's failure to meet the filing deadline resulted in little prejudice to the government or interference with the judicial process. Furthermore, plaintiff's counsel did not willfully violate the authority of the Court or otherwise act in bad faith. It is undisputed that during June and July 2000 plaintiff's counsel was waiting for important agency records (in the defendant's possession for part of that period) and that the parties were engaged in settlement talks on the sole remaining issue in the case. Defense counsel did not warn plaintiff's counsel that he would object on timeliness grounds until well after the first deadline had passed. Needless to say, plaintiff's counsel should have acted earlier: by moving for a stay or enlargement of time, or by submitting a partially complete brief and seeking leave to supplement it later. Nevertheless, in light of counsel's acknowledgment of and apology for the error, and the judicial system's "strong predisposition to resolve cases on their merits," the Court concludes that dismissal of Gurule-Hendren's motion for restored leave is not warranted.

## II.    MERITS

The remedial purpose of Title VII is to make plaintiffs whole for injuries they received due to unlawful employment discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). The statute provides:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. . . .

42 U.S.C. § 2000e-5(g)(1). The Supreme Court has held that back pay is equitable in nature and an integral component of the Title VII scheme. *Albemarle*, 422 U.S. at 415-18. Back pay includes not only salary loss, but also compensation for lost overtime, shift differentials, anticipated raises, and fringe benefits such as sick and annual leave. *See, e.g.*, *EEOC v. Joint Apprenticeship Committee*, 186 F.3d 110, 124 (2d Cir. 1999); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 & n.13 (10th Cir. 1994); *Long v. Ringling Bros.-Barnum & Bailey*, 9 F.3d 340, 343 (4th Cir. 1993).

Here, Gurule-Hendren claims that she should be restored 576.6 hours of annual leave time and 73.5 hours of sick leave time. These amounts correspond to leave taken between February 1993 and October 1997: the period during which Gurule-Hendren claims she suffered unlawful retaliation. She calculated the amounts by compiling the total number of hours she took for leave during this period and then subtracting time taken for such personal activities as birthdays, funerals, and vacations.[3] Gurule-Hendren argues that it is fair to attribute these remaining hours

---

[3] The government objects to the fact that Gurule-Hendren did not attach time and attendance sheets for the year 1993, so as to show which of her 179.5 annual leave hours were taken for personal reasons and which are attributable to Abla's retaliatory conduct. (Gurule-Hendren did not use any sick leave in 1993 or 1994.) As Gurule-Hendren explains in her affidavit, however, she could not obtain these records because the INS had removed them from her Albuquerque office and sent them to a regional office. The government has not disputed this fact or provided the missing records. The Court finds that Gurule-Hendren should be restored the

to Abla's retaliation because, throughout this period, her time records note "SL" (for "sick leave") next to marks for time taken as annual leave.  (Gurule-Hendren had previously exhausted her sick leave due to pregnancies.)  Gurule-Hendren submitted an affidavit stating that as a result of the retaliatory conduct, she suffered physical and emotional problems, severe migraine headaches, uncontrollable crying, nausea, vomiting, and loss of sleep and appetite.  She was often too sick to go to work or perform a full day of work.

    In response, the government argues that Gurule-Hendren is entitled only to leave taken between January 1, 1993 and May 29, 1994, the period during which the Department of Justice found that Gurule-Hendren was subjected to unlawful retaliatory conduct.  This period appears to reflect the scope of the Department's investigation, not necessarily the beginning and end of Gurule-Hendren's exposure to retaliation.  It is undisputed, however, that Gurule-Hendren was transferred to a different detail, away from Abla's supervision, in June 1994.  Although she states that she still experienced tension as a result of day-to-day contact with Abla, she provides no information regarding specific conduct that would support a finding of continued retaliation.[4] From June 1996 to October 1996, after receiving a promotion to investigative assistant, Gurule-Hendren was back under Abla's supervision.  She states that she was "still emotionally upset and fearful of Mr. Abla" during this time, but again provides no information regarding any specific

---

entire 179.5 hours for 1993.

    As for 1994, Gurule-Hendren took a total of 164.0 hours.  48.0 of these hours were taken for specific personal reasons, leaving 116.0 hours attributable to Abla's retaliatory conduct.

    [4] To her brief Gurule-Hendren attached an affidavit, memorandum, and letter written by her, as well as several letters written by co-workers and family members.  None of these materials describes specific acts of retaliation occurring in 1995, 1996, or 1997.

acts of harassment or retaliation by him or others.  In October 1996 Gurule-Hendren was assigned to work as an inspector in the employer sanctions unit, which resulted in her being away from the office (and Abla) most of the time.

The Court does not minimize the lasting effect that an employer's unlawful retaliatory conduct may have on an employee's well-being.  Indeed, exercising its equitable discretion, the Court finds it appropriate to award Gurule-Hendren full leave for the year of 1994, even though her transfer was effected in June of that year.  The Court, however, must resolve this issue in light of the Department of Justice's final decision, which allows for leave to be awarded "as a direct result of being subjected to retaliation."  *See also Hayes v. Shalala*, 933 F. Supp. 21, 27 (D.D.C. 1996) (refusing to award over 850 hours of sick and annual leave that had "at best, a highly attenuated connection" to findings of retaliatory conduct).  Gurule-Hendren has failed to present non-conclusory evidence linking her use of leave in 1995, 1996, and 1997 to specific acts of retaliation by Abla or other officials at the INS at that time.  Nor did she present any medical records linking continuing symptoms to retaliation that she experienced in 1993 and 1994.  Accordingly, the Court concludes that the remedial purpose of Title VII will be best served by awarding Gurule-Hendren restored annual leave for the years 1993 and 1994, in the amount of 295.5 hours.  See n.3, *supra*.  As requested (and without objection by the government), Gurule-Hendren shall have a period of three years from the date of judgment to use this restored leave.

## CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiff Gurule-Hendren's motion for restored leave **[Doc. No. 30]** is hereby **GRANTED IN PART**.  Plaintiff shall receive 295.5 hours of annual leave, to be used within three years from the date of judgment.

Pursuant to the Stipulated Order agreed to by the parties and entered on May 25, 2000, **[Doc. No. 26]** all remaining issues have been resolved and this matter is hereby dismissed.

 

 

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff
GABALDON LAW FIRM
Alex M. Gabaldon

Attorney for Defendant
Michael H. Hoses